ALINTEX, INC. AND FRED P. GASKELL CO., INC. *v.* UNITED STATES
(No. 5203)* **

United States Court of Customs and Patent Appeals, June 16, 1966

*Walter E. Doherty, Jr.* for appellants.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Arthur H. Steinberg* for the United States.

[Oral argument April 4, 1966 by Mr. Doherty, Jr. and Mr. Steinberg].

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges

SMITH, Judge, delivered the opinion of the court:

The United States Customs Court, Second Division, overruled twenty of twenty-one of appellants' consolidated protests against the classification of certain rayon exported from Yugoslavia (54 Cust. Ct. 111, C.D. 2517). The appeal from this decision and judgment questions the fact finding upon which it is based as well as its resolution of the issue of law involved.

The merchandise was assessed with duty at the rate of 15 per centum ad valorem under par. 1302 of the Tariff Act of 1930, as modified, 86 Treas. Dec. 121, T.D. 52739. Appellants claim that the imported rayon is properly dutiable at the rate of 5 per centum ad valorem under par. 1302 of the Tariff Act of 1930, as modified, 82 Treas. Dec. 305, T.D. 51802.

The portion of par. 1302 under which the merchandise was classified and assessed with duty, so far as is here pertinent, provides:

Filaments of rayon or other synthetic textile, not over 30 inches long, other than waste, whether known as cut fiber, staple fiber, or by any other name_____ 15% ad val.

The portion of par. 1302 under which appellants claim, provides so far as is pertinent as follows:

Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate_____ 5% ad val.

The parties agree that the merchandise is in chief value of viscose rayon in filaments not over 30 inches long. The disagreement is whether certain of the imported rayon is "waste," according to the applicable principles of law and the facts of record.

As factual background, appellants explain:

The testimony herein shows that the imported merchandise was the first run of production of a new mill of what was intended to be rayon staple fiber; that it was not intentionally sought as a waste; that it passed through the entire process of manufacture of rayon staple fiber; that it consisted of all of the errors and mistakes that can occur in the production of rayon staple fiber. If all of

the importations herein were to be considered together, it consists of a conglomeration of all the various types of waste that can occur in a rayon staple fiber plant, all with varying degrees of length, denier, color, luster, etc., and none of it having a dye code index. Even some of the Appellee's witnesses verified these factors, some of them going so far as to say that staple fiber waste, such as some of the exhibits herein, can be spun without prior preparation * * *.

## According to appellants,

The only two cases of any importance which contained issues almost identical to that in the case at bar and decided by the Customs Court are *A. L. Erlanger & Co.* v. *United States*, 35 Cust. Ct. 189, C.D. 1742 (1955), and *Dolliff & McGrath* v. *United States*, 40 Cust. Ct. 560, Abstract 61961 (1958). The merchandise in these cases consisted of rayon staple fiber waste which was a conglomeration or amalgamation of all of the various wastes which occur at various stages of manufacture of rayon staple fiber, all mixed together without any separation or segregation (35 Cust. Ct. 189, 197–40 Cust. Ct. 560, 561). In the case at bar the various wastes were not thrown into an aggregate or bulk mixture, but was sold as "the more desirable types". Also the testimony in the case at bar was to the effect that all of the merchandise herein was the first run of production of a new mill which had just recently come into operation in Yugoslavia.

For completeness we would add our decision in *Universal Transcontinental Corp.* v. *United States*, 40 CCPA 54, C.A.D. 497, wherein we considered par. 1302 and adopted the language of the trial court which stated:

Having provided in the first part of said paragraph for "waste of rayon" and realizing that "filaments of rayon" might be "waste of rayon" also, when the Congress came to write the provision for "filaments of rayon", it was very careful to exclude therefrom such filaments of rayon as were waste, by use of the words "other than waste." * * * By use of the language employed, the Congress simply made clear its intention to classify all waste rayon, including "filaments of rayon," if such were in fact waste, under the first part of the paragraph, as "waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate" (40 CCPA 57).

It is thus clear that "waste" rayon may include filaments of rayon.

In simple terms, appellants imported rayon material as produced at various stages in the mill operation. Unlike *A. L. Erlanger & Co.* and *Dolliff & McGrath*, supra, the various materials were not thrown into an aggregate mixture. Rather, they were sold separately as "more desirable types." Appellants filed 21 protests as to these various segregated mixtures. The 21 protests were considered together at trial and on appeal here. There is no separate argument as to any single protest.

Appellants' view of the protests was to show that the imported rayon did not qualify as "cut fiber" or "staple fiber," par. 1302, supra, and was therefore waste. Considerable testimony was introduced by both parties as to the trade meaning of "staple fibers." The trial court commented on the testimony as follows:

The record in this case is extensive and consists of the testimony of three witnesses called on behalf of the plaintiffs and seven called on behalf of defend-

ant, together with numerous exhibits received on behalf of both parties. Basically, all of the witnesses called on behalf of the plaintiffs testified that based upon their experience there is an article known as rayon staple fiber which must be uniform in length, denier, luster, tensile strength, and have a dye code index. They further indicated that it must be clean and free of splinters, etc., and, in the event that it was not uniform in the above characteristics or did not have a dye code index, it was considered as waste. Their testimony also related to the various processes during production where waste could occur. However, the record is barren of any evidence as to how or when, if, in fact, the involved merchandise is waste, the so-called waste occurred.

All witnesses called on behalf of both parties agreed that the imported merchandise, except as to the merchandise represented by exhibits 9, 15, and 16, which will hereinafter be discussed separately, could, in its condition as imported, be spun without further processing, such as but not limited to garnetting, picking, etc., on the cotton, woolen, or worsted systems.

On the other hand, the witnesses called on behalf of defendant testified, except as to the merchandise represented by exhibits 9, 15, and 16, that the imported merchandise as represented by the various exhibits, which exhibits are claimed to be representative of the imported merchandise, was rayon staple fiber. It is their collective testimony that rayon staple fiber is dealt in the trade in various grades and that, where the merchandise is not perfect, it may be degraded and sold as rayon staple fiber of various grades.

All witnesses for both parties agree that the merchandise represented by exhibits 9, 15, and 16 is waste.[1]

The witnesses called on behalf of defendant testified that rayon waste falls into two categories, (1) filament thread waste which would be composed of long continuous filaments, and (2) rayon staple fiber waste which would be a conglomeration of mixed lusters, deniers, lengths, and finishes. The record further establishes that the dye code index has no significance in the processing of staple fiber, is simply a guide to the customer to inform him that, so long as the same lot numbers are mixed, there would be no adverse effect on dyeing. It was further pointed out that staple fiber can be stock dyed before it is spun into yarn, or spun dyed, packaged dyed, or dyed in fabric form. All of these methods are available and appropriate to off-quality rayon staple fiber.

The opinions of the witnesses called on behalf of defendant, as to what rayon staple fiber waste is, appear to be that said waste is a conglomeration of lusters, deniers, lengths, etc., which would require further processing before it could be spun. Staple fiber, first quality or degraded staple fiber, in their opinions, is such as is suitable in its condition as purchased to be spun without further processing.

Appellants have the burden of showing here that the trial court, in holding that the involved merchandise was not waste but rayon staple fiber, did so contrary to the weight of the evidence before it or contrary to the law applicable to the case. Appellants have not met this burden.

The appellants admit that the term "staple fibers" is not exact and that the trade recognizes different grades or quality of staple fibers.

---

[1] The trial court found that exhibits 15 and 16 did not represent any of the imported rayon covered by the protests. Official exhibit 9 was destroyed by fire. The importer testified that substitute exhibit 9 was representative of the imported rayon covered by protest 60/31202. The trial court accepted the testimony of the importer over the findings of the collector and sustained this protest.

However, they assert that certainty in the law is desired and ask that we hold, as a matter of law, that "staple fibers" be defined as including only "first quality" staple fiber, with the corresponding result that all other staple fiber is waste. As appellants state in their brief:

Surely, faced with such loose standards as these, and with no certainty as to the exact line of demarcation between waste on the one hand, and "off-quality" staple fiber on the other, how could we expect Customs Examiners to determine with any degree of assurance what is rayon staple fiber waste and what is "off-quality" staple fiber? If there is no uniformity of opinion among the companies represented by the government's witnesses as to such a distinction, utter confusion would exist. However, the distinction drawn by the appellants' witnesses between "first quality" staple fiber on the one hand, which they said was "staple fiber", and *everything else,* which they said was "waste", would afford the Examiners a more sound basis for classification.

Appellants admit that they choose to segregate the various rayons so that it might be sold as the more desirable types. They also choose to consolidate the protests. It is at once apparent that the imported rayon does not qualify as waste under the principles of *A. L. Erlanger & Co.* and *Dolliff & McGrath,* supra. Nor need we consider whether individual portions of the imported rayon, as represented by exhibits corresponding to individual protests, are "waste." The "certainty" that appellants desire to impose on par. 1302, represents a substantial departure from existing law concerning the meaning of "waste," as discussed in the opinion of the trial court and in the above cases.

We find that the trial court did not commit error as to the substantive principles of law and that there is substantial evidence in support of its findings of fact. These findings of fact will not be disturbed. *United States* v. *C. J. Tower & Sons,* 38 CCPA 131, 136 C.A.D. 450.

The judgment of the trial court is therefore *affirmed.*

